Lily Hough (SBN 315277)
lhough@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Additional counsel appear below signature line

*Counsel for Plaintiffs and the Putative Classes*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MEDINA CAMACHO and RHONDA COTTA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE CONTROL GROUP MEDIA COMPANY, LLC, a Delaware limited liability company, and TRUTHFINDER, LLC, a Delaware limited liability company,<br><br>Defendants. | Case No.: '21CV1957 MMAJLB<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**Violations of the Alabama Right of Publicity Act and the California Right of Publicity Statute**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Jose Medina Camacho and Rhonda Cotta ("Plaintiffs") bring this Class Action Complaint against Defendants The Control Group Media Company, LLC ("TCG") and TruthFinder, LLC ("TruthFinder") to put an end to Defendants' unlawful practice of using the names and identities of Alabama and California residents without their consent in order to promote Defendants' services. Plaintiffs, on behalf of themselves and all others similarly situated, allege as follows upon personal knowledge as to their own acts and experiences, and, as to all other

matters, upon information and belief, including investigation conducted by their own attorneys.

## NATURE OF THE ACTION

1. Defendants operate Truthfinder.com, a website that purports to sell access to a database containing proprietary "detailed reports" about people to anybody willing to pay for a monthly subscription.

2. To market their services, Defendants encourage consumers to perform a free "people search" on their website. When consumers perform a free search for an individual—by typing the individual's first and last name into the search bar—Defendants display webpages featuring the searched individual's full name alongside certain uniquely identifying information, including age, location, and names of relatives. The purpose of these pages is twofold: first, they show potential customers that Defendants' database contains detailed reports for the *specific* individual they searched for and represent that the detailed report contains much more information about the individual than the "free" report, and second, they offer to sell them a paid subscription to their services, where they can access detailed reports about *anybody* in their database. In other words, Defendants do not offer to sell detailed reports about the individuals searched on their websites, but rather, use their identities to sell subscriptions to Defendants' paid services.

3. Unsurprisingly, the people appearing in these advertisements never provided Defendants with their consent (written or otherwise) to use their identities for any reason, let alone for Defendants' own marketing and commercial purposes.

4. Defendants knowingly search for and obtain identifying information on Alabama and California residents. Indeed, this lawsuit revolves around Defendants' business practice of acquiring identifying information about Alabama and California residents with the specific intent of selling access to that

CLASS ACTION COMPLAINT 2 CASE NO.

information to their consumers.

5. Defendants compile and generate the content they advertise and sell on their websites.

6. By knowingly using Plaintiffs' identities in their advertisements without consent and for their own commercial gain, Defendants violated the right of publicity laws in Alabama and California. Ala. Code § 6-5-770, *et seq*.; Cal. Civ. Code § 3344.

## PARTIES

### Plaintiffs

7. Plaintiff Jose Medina Camacho is a natural person and a resident of the State of Alabama.

8. Plaintiff Rhonda Cotta is a natural person and a resident of the State of California.

### Defendants

9. Defendant The Control Media Company, LLC is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at 600 B Street, Suite 900, San Diego, California 92101. TCG operates under a fictitious business name of "PeopleConnect."

10. Defendant TruthFinder, LLC is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at 600 B Street, Suite 900, San Diego, California 92101.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 members of the Classes, defined below, many of which are citizens of a

different state than Defendants. Defendant TCG is a citizen of California, where it maintains its principal place of business, and Defendant TruthFinder is a citizen of California, where it maintains its principal place of business.

12. The Southern District of California has personal jurisdiction over Defendants because both Defendants are headquartered and conduct substantial business in this District.

13. Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants are headquartered and reside in this District, its senior officers are located in this District, and a substantial part of the events giving rise to Plaintiffs' claims arose in this District.

## FACTUAL ALLEGATIONS

### I.   THE ALABAMA RIGHT OF PUBLICITY ACT

14. In 2015, the Alabama Legislature recognized that every person has the "right of publicity in any indicia of identity," Ala. Code § 6-5-771(3), and as a result, passed the Alabama Right of Publicity Act, ("ARPA"), to protect individual property rights and prevent the exploitation of individuals' identities for another's commercial gain.

15. The ARPA protects individuals from the unauthorized use of any of their attributes, including but not limited to, their names, signatures, photographs, images, likenesses, voices, or a substantially similar limitation of one or more of those attributes in the sale or advertisement of products, goods, merchandise, and services.

16. In fact, the ARPA states that, "any person or entity who uses or causes the use of the indicia of identity of a person . . . for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services . . . without consent shall be liable under this article to that person, or to a holder of

that person's rights." Ala. Code § 6-5-772(a).

17. Notably, the ARPA provides a right of publicity "in any indicia of identity . . . whether or not famous," Ala. Code § 6-5-771(3), as well as liability for persons or entities who wrongfully use another person's indicia of identity "whether the use is for profit or not for profit." Ala. Code § 6-5-772(b).

## II. THE CALIFORNIA RIGHT OF PUBLICITY STATUTE

18. Similarly, the California legislature enacted a right of publicity statute in 1971 to protect individual property rights and prevent the exploitation of individuals' identities for another's commercial gain.

19. The statute protects individuals from the unauthorized use of any of their attributes, including but not limited to, their names, signatures, photographs, images, likenesses, voices, or a substantially similar limitation of one or more of those attributes in the sale or advertisement of products, goods, merchandise, and services.

20. In fact, the statute states that, "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof." Cal. Civ. Code § 3344(a).

## III. DEFENDANTS USE INDIVIDUALS' IDENTITIES TO PROMOTE THEIR PAID SUBSCRIPTION SERVICE

21. TCG controls and operates four "people search" websites: TruthFinder, Intelius, Instant Checkmate, and US Search (the "People Search Websites").

22. TCG designed each of the People Search Websites to operate in a

substantially similar way: to misappropriate consumers' identities for its own commercial gain by using Plaintiffs' and the Class members' identities in conjunction with an offer to purchase a paid subscription to access its database—entirely without their knowledge or consent.

23. TCG created and controls the marketing and advertising of all the People Search Websites, including the Marketing Page solicitations at issue in this case. TCG also controls many other operational aspects of each of the People Search Websites. This includes, for example, the Websites' use of virtually identical customer agreements and notices, the same graphical interface features and site layouts, and the same databases and other resources to respond to searches performed on the websites.

24. The People Search Website at issue here is Truthfinder.com, a website that sells access to comprehensive background reports "on just about anyone." The reports are compiled in part from databases and public record repositories.

25. Subscriptions that let users access TruthFinder reports must be purchased from the Truthfinder.com website. Once a subscription is purchased, users may access individual reports that may include high value information including, *inter alia*, the individual's address, birth date, marriage records, and criminal history.

26. As shown in Figures 1 and 2 below, when a consumer visits Truthfinder.com and searches for an individual by using their first and last name, Truthfinder.com displays a list of the individuals found within its records that have the same name, alongside certain uniquely identifying information such as each individual's current age, location and names of their immediate family members (the "TruthFinder Marketing Page").



(**Figure 1.**)



(**Figure 2.**)

27. Once a consumer selects an individual (by clicking "Open Report") from the TruthFinder Marketing Page, TruthFinder displays a checkout page with an offer to purchase a subscription to the website: a 5-day trial costing $1.00 with access to unlimited reports, with a monthly subscription costing $29.89 per month thereafter. *See* Figure 3.



(**Figure 3.**)

28. While a consumer may visit Truthfinder.com to search and potentially obtain information on one specific individual, TruthFinder ultimately offers for sale an entirely different product. TruthFinder is not offering for sale only information on the searched individual. Instead, TruthFinder is offering for sale a

monthly subscription service that grants the purchaser unlimited access to background reports on anybody in its database. The searched-for individual's report is a small part of a large database with reports on millions of people.

29. In this way, TruthFinder misappropriated people's identities (individuals' names and other identifying information such as their age, location, and known relatives) for its own commercial benefit (i.e., to market and promote a monthly subscription to access unlimited reports on individuals in its database).

30. Most importantly, TruthFinder never obtained written consent from Plaintiffs and Class members to use their names for any reason, let alone for commercial purposes. Defendants never notified Plaintiffs and Class members that their names would appear on the TruthFinder Marketing Page in conjunction with an offer to purchase subscription access to its database of reports. Moreover, Plaintiffs and the Class members have no relationship with TCG or TruthFinder whatsoever.

**FACTS SPECIFIC TO PLAINTIFFS JOSE MEDINA CAMACHO AND RHONDA COTTA**

31. Plaintiffs Jose Medina Camacho and Rhonda Cotta discovered that Defendants were using their identities to solicit the purchase of paid subscriptions to Truthfinder.com.

32. Defendants specifically identified Plaintiffs by their full names, ages, locations, and names of immediate family members on the TruthFinder Marketing Page. *See* Figures 1 and 2.

33. Plaintiffs never provided Defendants with their written consent (or consent of any kind) to use any attribute of their identities for commercial purposes, and certainly never authorized Defendants to use their identities to promote any of their products or services.

34. Defendants have never provided Plaintiffs with compensation of any kind for their use of Plaintiffs' identities in connection with any advertising on TruthFinder or any other website.

35. Plaintiffs are not and have never been customers of any of Defendants' websites. In fact, they have no relationship with TCG or TruthFinder whatsoever.

## CLASS ALLEGATIONS

36. **Class Definitions:** Plaintiffs Jose Medina Camacho and Rhonda Cotta bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and two Classes (collectively, the "Classes", unless otherwise stated), defined as follows:

> **Alabama Class (represented by Plaintiff Camacho):** All Alabama residents (1) whose identities were displayed on the TruthFinder Marketing Page and (2) who have never purchased any products or services on Truthfinder.com.
>
> **California Class (represented by Plaintiff Cotta):** All California residents (1) whose identities were displayed on the TruthFinder Marketing Page and (2) who have never purchased any products or services on Truthfinder.com.

37. Excluded from the Classes are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

38. **Ascertainability and Numerosity**: The exact number of Class

members is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. Additionally, the Classes are ascertainable because their members will be easily identified through Defendants' records.

39. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the putative Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    a. Whether Defendants used Plaintiffs' and Class members' names and identities for a commercial purpose;

    b. Whether Plaintiffs and Class members provided their written consent to Defendants to use their names and identities in advertisements;

    c. Whether the conduct described herein constitutes a violation of right of publicity laws in Alabama and California; and

    d. Whether Plaintiffs and the Class members are entitled to injunctive relief.

40. **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs and the Class members sustained damages arising out of Defendants' uniform wrongful conduct.

41. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendants have no defense unique to Plaintiffs.

42. **Policies Generally Applicable to the Classes:** This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final injunctive relief appropriate with respect to the Classes as a whole. Defendants' policies challenged herein apply and affect members of the Classes uniformly and Plaintiffs' challenge of these policies hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs. Plaintiffs and the members of the Classes have suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

43. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

# COUNT I
### Violation of the Alabama Right of Publicity Act
### Ala. Code § 6-5-770 *et seq.*
### (On behalf of Plaintiff Camacho and the Alabama Class)

44. Plaintiff Camacho incorporates the foregoing allegations as if fully set forth herein.

45. The ARPA prohibits using a person's name, image, or likeness for the purpose of advertising or promoting products, merchandise, goods or services without consent. *See* Ala. Code § 6-5-772.

46. Defendants sold and/or sell subscription-based access to their databases containing detailed reports about people.

47. As described above, to promote those reports, Defendants used and/or use Plaintiff Camacho's and the putative Alabama class members' identities on their various Marketing Pages, which display the individuals found within their records that match the searched name, alongside uniquely identifying information such as each person's current age, location, and names of their immediate family members. This information served and/or serves to identify the individual and demonstrate that there are detailed reports in their databases for the person they searched for.

48. The Marketing Pages have a commercial purpose in that they promote the Defendants' website and encourage potential customers to purchase paid subscriptions to access reports in their database.

49. Plaintiff and members of the Alabama Class never provided Defendants with their consent to use their identities in advertisements for Defendants' paid subscriptions.

50. Defendants deprived Plaintiff and Alabama Class members of control over whether and how their names can be used for commercial purposes.

51. By using their identities in advertisements to sell their services,

Defendants derived economic value from Plaintiff and the Alabama Class members' identities and, in turn, deprived Plaintiff and the Alabama Class members of such value. Defendants did not compensate Plaintiff and the Alabama Class members for their use of Plaintiff and the Alabama Class members' identities. This conduct resulted in economic injury to Plaintiff and the Alabama Class members.

52. Based upon Defendants' violation of the ARPA, Plaintiff Camacho and Alabama Class members are entitled to (1) an injunction requiring Defendants to cease using their names and any attributes of their identities to advertise their products and services, (2) the greater of an award of actual damages (including profits derived from the unauthorized use of Plaintiff Camacho's and Alabama Class members' names and identities) or statutory damages of $5,000 per violation to the members of the Alabama Class, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees under Ala. Code § 6-5-774.

**COUNT 2**
**Violation of the California Right of Publicity Statute**
**Cal. Civ. Code § 3344**
**(On behalf of Plaintiff Cotta and the California Class)**

53. Plaintiff Cotta incorporates the foregoing allegations as if fully set forth herein.

54. The California Right of Publicity Statute prohibits and provides damages for the knowing misappropriation of an individual's name, voice, signature, photograph, or likeness in advertising or soliciting without the individual's prior consent. *See* Cal. Civ. Code § 3344(a).

55. Defendants sold and/or sell subscription-based access to their databases containing detailed reports about people.

56. As described above, to promote those reports, Defendants used and/or use Plaintiff Cotta's and the putative California class members' identities on their

various Marketing Pages, which display the individuals found within their records that match the searched name, alongside uniquely identifying information such as each person's current age, location, and names of their immediate family members. This information served and/or serves to identify the individual and demonstrate that there are detailed reports in their databases for the person they searched for.

57. The Marketing Pages have a commercial purpose in that they promote the Defendants' website and encourage potential customers to purchase paid subscriptions to access reports in their database.

58. Plaintiff and members of the California Class never provided Defendants with their consent to use their identities in advertisements for Defendants' paid subscriptions.

59. Defendants deprived Plaintiff and California Class members of control over whether and how their names can be used for commercial purposes.

60. By using their identities in advertisements to sell their services, Defendants derived economic value from Plaintiff and the California Class members' identities and, in turn, deprived Plaintiff and the California Class members of such value. Defendants did not compensate Plaintiff and the California Class members for their use of Plaintiff and the California Class members' identities. This conduct resulted in economic injury to Plaintiff and the California Class members.

61. Based upon Defendants' violation of the California Right of Publicity Statute, Plaintiff Cotta and California Class members are entitled to (1) an injunction requiring Defendants to cease using their names and any attributes of their identities to advertise their products and services, (2) the greater of an award of actual damages (including profits derived from the unauthorized use of Plaintiff Cotta's and California Class members' names and identities) or statutory damages

of $750 per violation to the members of the California Class, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees under Cal. Civ. Code § 3344(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, pray that the Court enter an Order:

a. Certifying this case as a class action defined above, appointing Jose Medina Camacho and Rhonda Cotta as representatives of the Alabama and California Classes, respectively, and appointing their attorneys as Class Counsel;

b. Declaring that Defendants' actions described herein constitute a violation of the Alabama Right of Publicity Act and the California Right of Publicity Statute;

c. Awarding injunctive and other equitable relief as necessary to protect the interest of the Classes, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

d. Awarding statutory damages in amounts to be determined by the Court and/or jury;

e. Awarding punitive damages where applicable;

f. Awarding Plaintiffs and the Classes their reasonable litigation expenses and attorneys' fees;

g. Awarding Plaintiffs and the Classes pre- and post-judgment interest; and

h. Granting such other and further relief as the Court deems equitable and just.

|   |   |
|---|---|
|   | Respectfully submitted, |
|   | **JOSE MEDINA CAMACHO** and **RHONDA COTTA** individually and on behalf of all others similarly situated, |
| Dated: November 16, 2021 | By: */s/* Lily Hough<br>    One of Plaintiffs' Attorneys |

Lily Hough (SBN 315277)
**EDELSON PC**
150 California Street, 18th Floor
San Francisco, California 94111
Tel: (415) 212.9300
Fax: (415) 373.9435
lhough@edelson.com

Benjamin H. Richman (*Pro Hac Vice* admission to be sought)
Ari J. Scharg (*Pro Hac Vice* admission to be sought)
Benjamin Thomassen (*Pro Hac Vice* admission to be sought)
**EDELSON PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589.6370
Fax: (312) 589.6378
brichman@edelson.com
ascharg@edelson.com
bthomassen@edelson.com

Kevin Tucker (He/Him) (*Pro Hac Vice* admission to be sought)
Kevin Abramowicz (He/Him) (*Pro Hac Vice* admission to be sought)
**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel. (412) 877-5220
Fax. (412) 626-7101
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com

Philip L. Fraietta (*Pro Hac Vice* admission to be sought)
**BURSOR & FISHER, P.A.**
888 Seventh Avenue

New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
pfraietta@bursor.com