**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar. No. 269109)
kspelman@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, California 90071
Telephone:   213 239-5100
Facsimile:    213 239-5199

**JENNER & BLOCK LLP**
Debbie L. Berman (*pro hac vice*) (Ill. Bar No. 6205154)
dberman@jenner.com
Wade A. Thomson (*pro hac vice*) (Ill. Bar No. 6282174)
wthomson@jenner.com
Clifford W. Berlow (*pro hac vice*) (Ill. Bar No. 6292383)
cberlow@jenner.com
353 North Clark Street
Chicago, Illinois 60654
Telephone:   312 222-9350
Facsimile:    312 527-0484

Attorney for Defendants The Control Group Media
Company, LLC and TruthFinder, LLC

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MEDINA CAMACHO and RHONDA COTTA, on behalf of themselves and all others similarly situated, <br><br>            Plaintiffs, <br><br>    v. <br><br> THE CONTROL GROUP MEDIA COMPANY, LLC, a Delaware limited liability company, and TRUTHFINDER, LLC, a Delaware limited liability company, <br><br>            Defendants. | Case No. 3:21-cv-01957-MMA-JLB <br><br> The Honorable Michael M. Anello <br><br> **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT** <br><br> Hearing Date:   April 4, 2022 <br> Hearing Time:   2:30 p.m. <br> Courtroom:       3D |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION ...........................................................................................................1

BACKGROUND ...............................................................................................................1

ARGUMENT .....................................................................................................................3

I.    Plaintiffs Agreed To Arbitrate Their Claims................................................................3

    A.    Plaintiffs' Attorney Agreed To The Terms Of Use As Their Agent. .............3

    B.    Plaintiffs Must Arbitrate Their Dispute. ....................................................4

    C.    If The Court Determines That The Record Does Not Sufficiently
        Establish Ratification, The Court Should Order Limited Discovery.............5

II.    Plaintiffs' Class Allegations Should Be Stricken.....................................................6

III.    Cotta Fails To State A Claim Under § 3344..........................................................6

    A.    Cotta Fails To Plead A *Prima Facie* Claim Under § 3344. ..........................6

        1.    Cotta Fails To Plead A "Use" Of Her Identity. ..................................6

        2.    Cotta Fails To Plead Use Of Her Identity "For Purposes Of
            Advertising Or Selling, Or Soliciting Purchases." ...............................7

        3.    Cotta Consented To The Use Of Her Identity. ..................................10

        4.    Cotta Fails To Plead An Actionable Injury. .......................................10

    B.    Cotta's Claim Is Barred By § 3344's "Public Affairs" Exemption. .............11

IV.    Camacho Fails To State A Claim Under ARPA. ....................................................12

    A.    Camacho Fails To Plead A *Prima Facie* Claim Under ARPA....................13

    B.    Camacho's Claim Falls Within ARPA's Exemptions. ................................13

        1.    Camacho's Claim Is Barred by the "Public Interest" Exemption. .....13

2.      Camacho's Claim Is Barred by the "Expressive Work" Exemption. ........................................ 14

C.      Camacho Fails To Plead A Claim Within ARPA's Territorial Scope. ......... 15

V.      Federal Law Bars Plaintiffs' Claims. ...................................................... 16

A.      The Communications Decency Act Bars Plaintiffs' Claims. ........................ 16

B.      The First Amendment Bars Plaintiffs' Claims. ............................................ 18

1.      Plaintiffs' Claims Trigger Strict Scrutiny. ......................................... 18

2.      Even If The Search Results Were Commercial Speech, Plaintiffs Cannot Satisfy Intermediate Scrutiny. ................................. 20

C.      Plaintiffs' Liability Theory Violates The Dormant Commerce Clause. ....... 21

VI.     Plaintiffs' Claims Are Barred By The California Anti-SLAPP Statute. ................. 23

A.      Plaintiffs' Suit Arises From TruthFinder's Protected Conduct. .................. 24

B.      Plaintiffs Cannot Show A Likelihood Of Success On Their Claims. ........... 25

CONCLUSION .................................................................................................. 25

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*ACLU v. Johnson*,
   194 F.3d 1149 (10th Cir. 1999) ...................................................................... 23

*Almeida v. Amazon.com, Inc.*,
   456 F.3d 1316 (11th Cir. 2006) ........................................................................ 8

*Alvarado Cmty. Hosp. v. Superior Ct.*,
   173 Cal. App. 3d 476 (1985) ............................................................................. 4

*Am. Beverage Ass'n v. Snyder*,
   735 F.3d 362 (6th Cir. 2013) ..................................................................... 22, 23

*Am. Booksellers Found. v. Dean*,
   342 F.3d 96 (2d Cir. 2003) ........................................................................ 22, 23

*Am. Libraries Ass'n v. Pataki*,
   969 F. Supp. 160 (S.D.N.Y. 1997) ................................................................. 23

*Ballen v. City of Redmond*,
   466 F.3d 736 (9th Cir. 2006) .......................................................................... 21

*Baptist Health Sys., Inc. v. Mack*,
   860 So. 2d 1265 (Ala. 2003) ............................................................................. 4

*Barrett v. Rosenthal*,
   40 Cal. 4th 33 (2006) ...................................................................................... 24

*Bartnicki v. Vopper*,
   532 U.S. 514 (2001) .................................................................................. 18, 20

*Baugh v. CBS, Inc.*,
   828 F. Supp. 745 (N.D. Cal. 1993) ................................................................ 11

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983) .......................................................................................... 20

*Brooks v. Thomson Reuters Corp.*,
   No. 21-cv-01418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .................... 8

iii

*Callahan v. Ancestry.com Inc.*,
No. 20-cv-08437, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ..................................... 16

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
447 U.S. 557 (1980) ........................................................................................ 20, 21

*Cher v. Forum Int'l, Ltd.*,
692 F.2d 634 (9th Cir. 1982) ........................................................................................ 20

*Christoff v. Nestlé USA, Inc.*,
47 Cal. 4th 468 (2009) ............................................................................................. 6, 7

*Clark v. Andover Sec.*,
44 F. App'x 228 (9th Cir. 2002) .................................................................................... 4

*Cohen v. Facebook, Inc.*,
798 F. Supp. 2d 1090 (N.D. Cal. 2011) ................................................................. 10, 11

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469 (1975) ...................................................................................................... 20

*Cross v. Facebook, Inc.*,
14 Cal. App. 5th 190 (2017) .......................................................................................... 7

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ........................................................................................................ 3

*Dennis v. MyLife.Com, Inc.*,
No. 20-cv-954, 2021 WL 6049830 (D.N.J. Dec. 20, 2021) .............................. 16, 17, 18

*Dex Media W., Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ....................................................................................... 18

*Dobrowolski v. Intelius, Inc,*.
No. 17 CV 1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018) .................................. 8

*Doe v. Oesterblad*,
No. EDCV 13 0514, 2013 WL 12085541 (C.D. Cal. May 9, 2013) ............................ 20

*Doe v. Roe*,
638 So. 2d 826 (Ala. 1994) .......................................................................................... 14

*Dora v. Frontline Video, Inc.*,
15 Cal. App. 4th 536 (1993) ................................................................................... 12, 24

iv

*Eidson v. Albertville Auto Acquisitions, Inc.*,
No. 19-cv-00459, 2019 WL 6311495 (N.D. Ala. Nov. 25, 2019) .................................. 6

*Force v. Facebook, Inc.*,
934 F.3d 53 (2d Cir. 2019) .................................................................... 17

*Gionfriddo v. Major League Baseball*,
94 Cal. App. 4th 400 (2001) ............................................................ 7, 9, 11, 24

*Gonzalez v. Google LLC*,
2 F.4th 871 (9th Cir. 2021) ..................................................................... 17

*In re Google, Inc. Privacy Policy Litig.*,
No. C-12-01382, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ................................. 11

*Groden v. Random House, Inc.*,
61 F.3d 1045 (2d Cir. 1995) .................................................................... 20

*Guglielmi v. Spelling-Goldberg Prods.*,
25 Cal. 3d 860 (1979) ............................................................................ 7

*Healy v. Beer Inst.*,
491 U.S. 324 (1989) ............................................................................. 21

*Hesse v. Sprint Spectrum, L.P.*,
No. C06-0592, 2012 WL 37399 (W.D. Wash. Jan. 9, 2012) ......................................... 6

*hiQ Labs v. Linkedin Corp.*,
273 F. Supp. 3d 1099 (N.D. Ill. 2017) .......................................................... 25

*Holman v. Bath & Body Works, LLC*,
No. 20-cv-01603, 2021 WL 5826468 (E.D. Cal. Dec. 8, 2021) ...................................... 6

*Hui Ma v. Golden State Renaissance Ventures, LLC*,
No. 21-cv-00856, 2021 WL 2190912 (N.D. Cal. May 31, 2021) ................................. 5

*IMDb.com Inc. v. Becerra*,
962 F.3d 1111 (9th Cir. 2020) ............................................................ 18, 19

*Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*,
No. 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019) ................................... 5

*Italian Colors Rest. v. Becerra*,
878 F.3d 1165 (9th Cir. 2018) ........................................................... 20, 21

*J.C. v. WALA-TV, Inc.*,
    675 So. 2d 360 (Ala. 1996) .................................................................................. 14

*Jane Doe No. 1 v. Backpage.com, LLC*,
    817 F.3d 12 (1st Cir. 2016) .................................................................................. 17

*Johnson v. Jackson*,
    No. 20-CV-1710, 2021 WL 2826427 (N.D. Ala. July 7, 2021) ........................ 12, 13, 14

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016) ........................................................................ 16, 17

*Kindred Nursing Ctrs. E., LLC v. Jones*,
    201 So. 3d 1146 (Ala. 2016) .................................................................................. 4

*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ................................................................................ 2

*Levin v. Caviar, Inc.*,
    146 F. Supp. 3d 1146 (N.D. Cal. 2015) .................................................................. 3

*Liberi v. Taitz*,
    No. SACV 11-0485, 2011 WL 13315691 (C.D. Cal. Oct. 17, 2011) ........................ 18

*Lightbourne v. Printroom Inc.*,
    122 F. Supp. 3d 942 (C.D. Cal. 2015) .................................................................. 10

*Local TV, LLC v. Superior Ct.*,
    3 Cal. App. 5th 1 (2016) ...................................................................................... 21

*Makaeff v. Trump Univ., LLC*,
    715 F.3d 254 (9th Cir. 2013) ........................................................................ 24, 25

*Makaeff v. Trump Univ., LLC*,
    736 F.3d 1180 (9th Cir. 2013) .............................................................................. 23

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ................................................................................ 6

*Miller v. Collectors Universe, Inc.*,
    159 Cal. App. 4th 988 (2008) .............................................................................. 10

*Montana v. San Jose Mercury News, Inc.*,
    34 Cal. App. 4th 790 (1995) ............................................................................ 9, 20

*Mormile v. Sinclair*,
    21 Cal. App. 4th 1508 (1994) ........................................................................ 4

*Murphy v. Schneider Nat'l, Inc.*,
    362 F.3d 1133 (9th Cir. 2004) ..................................................................... 3

*Namath v. Sports Illustrated*,
    363 N.Y.S.2d 276 (N.Y. Sup. Ct. 1975)................................................. 9, 20

*New Kids on the Block v. News Am. Publ'g, Inc.*,
    745 F. Supp. 1540 (C.D. Cal. 1990) .......................................................... 24

*Nieman v. VersusLaw, Inc.*,
    512 F. App'x 635 (7th Cir. 2013) ..........................................................19-20

*Nieman v. Versuslaw, Inc.*,
    No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) ........................... 8

*Nygård, Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027 (2008) ................................................................... 24

*Obado v. Magedson*,
    Civ. No. 13-2382, 2014 WL 3778261 (D.N.J. July 31, 2014) ................. 8, 18

*Ex parte Old Republic Sur. Co.*,
    733 So. 2d 881 (Ala. 1999)......................................................................... 15

*Ostergren v. Cuccinelli*,
    615 F.3d 263 (4th Cir. 2010) ...................................................................... 20

*Pace v. Smith*,
    280 So. 3d 428 (Ala. Civ. App. 2019) .......................................................... 4

*Perkins v. Linkedin Corp.*,
    53 F. Supp. 3d 1222 (N.D. Cal. 2014).......................................................... 11

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970)..................................................................................... 22

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) ...................................................................... 25

*PSINet, Inc. v. Chapman*,
    362 F.3d 227 (4th Cir. 2004) ...................................................................... 23

vii

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015)..................................................................................................18

*Rush v. Atomic Elec. Co.,*
    384 So. 2d 1067 (Ala. 1980)....................................................................................4

*Sam Francis Found. v. Christies, Inc.,*
    784 F.3d 1320 (9th Cir. 2015) ...............................................................................21

*Sarver v. Chartier,*
    813 F.3d 891 (9th Cir. 2016) .................................................................................18

*Shulman v. Grp. W Prods., Inc.,*
    18 Cal. 4th 200 (1998) ...........................................................................................11

*Simple Helix, LLC v. Relus Techs., LLC,*
    No. 20-cv-00453, 2020 WL 7401592 (N.D. Ala. Dec. 17, 2020)..........................4, 5

*Slivinsky v. Watkins-Johnson Co.,*
    221 Cal. App. 3d 799 (1990) ..................................................................................10

*Sorrell v. IMS Health Inc.,*
    564 U.S. 552 (2011)................................................................................................18

*State Farm Mut. Auto. Ins. Co. v. Motley,*
    909 So. 2d 806 (Ala. 2005).....................................................................................13

*Stokes v. CitiMortgage, Inc.,*
    No. CV 14-00278, 2015 WL 709201 (C.D. Cal. Jan. 16, 2015)...............................6

*Tamsco Props., LLC v. Langemeier,*
    597 F. App'x 428 (9th Cir. 2015) ............................................................................5

*Tompkins v. 23andMe, Inc.,*
    No. 13-CV-05682, 2014 WL 2903752 (N.D. Cal. June 25, 2014) ...........................3

*United States v. United Foods, Inc.,*
    533 U.S. 405 (2001)................................................................................................19

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,*
    425 U.S. 748 (1976)................................................................................................19

*Vrdolyak v. Avvo, Inc.,*
    206 F. Supp. 3d 1384 (N.D. Ill. 2016) ..............................................................18, 20

viii

*Wilbanks v. Wolk*,
   121 Cal. App. 4th 883 (2004) ........................................................................ 24

*William O'Neil & Co. v. Validea.com Inc.*,
   202 F. Supp. 2d 1113 (C.D. Cal. 2002) ........................................... 12, 20, 25

**Statutes and Rules**

47 U.S.C. § 230(c)(1) .......................................................................................... 16

Ala. Code § 6-5-772(a) ...................................................................................... 13, 16

Ala. Code § 6-5-773 ................................................................................ 13, 14, 15, 16

Ala. Code § 8-2-4 .................................................................................................. 4

Cal. Civ. Code § 2330 ............................................................................................ 4

Cal. Civ. Code § 3344 .......................................................................... 6, 7, 10, 11

Cal. Code Civ. P. § 425.16 .................................................................... 23, 24, 25

Fed. R. Civ. P. 12(b) .............................................................................................. 3

**Other Authorities**

*Expressive*, Merriam-Webster, https://www.merriam-
   webster.com/dictionary/expressive ................................................................ 15

Othni J. Lathram et al., *Alabama's Right of Publicity Act,* 76 Ala. Law 256
   (2015) .............................................................................................................. 12

*Restatement (Third) of Unfair Competition* § 47, Westlaw (database updated
   Oct. 2021 (1995) .................................................................................... 8, 9, 12

*Work*, Merriam-Webster, https://www.merriam-webster.com/dictionary/work ............... 15

**INTRODUCTION**

Defendants The Control Group Media Company, LLC and TruthFinder, LLC (collectively, "TruthFinder"), operate TruthFinder.com, a website that enables users to search for biographical information about individuals by inputting a name into a search engine which generates a list of search results. Plaintiffs improperly attempt to use the California and Alabama right of publicity statutes to attack this routine part of e-commerce—generating search results based upon user inputs into a search engine—that these statutes were never intended to cover. These search results are no different from results produced by any other internet search engine where a user can search for information about a person, such as looking for a biography on Amazon.

Plaintiffs' suit should be stopped in its tracks for a simple reason—Plaintiffs are bound by TruthFinder's Terms of Use ("TOU") to resolve their claims in arbitration on an individual basis. Additionally, Plaintiffs' claims all are premised on the demonstrably false assertion that their identities are improperly being used to sell an unrelated product. Uncropped screenshots of the website objectively resolve that it is untrue. Plaintiffs thus have failed to state an actionable claim for a range of reasons—they have not and cannot plead all the elements of their claims, Section 230 of the Communications Decency Act ("CDA") bars their claims, California's anti-SLAPP statute bars them as well, and both the First Amendment and the Commerce Clause further foreclose them. At bottom, the right of publicity that California and Alabama recognize simply does not prohibit TruthFinder or any other search engine from providing users with search results so users can determine whether the website has a background report about the person for whom the user is searching. This Court should reject what amounts to an attempt to abolish search-engine-based products like TruthFinder's public-record, biographical background reports.

**BACKGROUND**

TruthFinder sells access to background reports that are "compiled" from third-party sources, including "public record repositories." Compl. ¶¶1, 24. Given the number of people about whom TruthFinder may have access to information, it does not contain a pre-

existing list of individuals for whom they can compile a report, nor does it have pre-existing reports for all those individuals. *See id.* ¶26. Instead, like websites across the internet, TruthFinder offers a free search function that allows users to "search for an individual" to determine if a report can be compiled about that person. *Id.* ¶¶1–2. This function is available on TruthFinder's home page, by way of a "search bar" into which a user "typ[es] the individual's first and last name." *Id.* ¶¶2, 26; Declaration of Brian Mahon ("Decl.") Ex. A at 2 (hereinafter "Decl. Ex. A").[1] A user then is shown "a list of the individuals found" that have the "same name" as the queried person and possibly some additional biographical information. Compl. ¶26; Decl. Ex. A at 9. A user can view that person's report by clicking a link titled "Open Report." Compl. ¶26 (figs. 1–2); Decl. Ex. A at 9. Ultimately, after clicking through some twenty additional screens, the user may proceed to a separate page where the user can register to view the report of the searched-for person and other reports. Decl. Ex. A at 9–46.

Plaintiffs do not allege that anyone other than their counsel has ever searched for their names or that anyone other than their counsel has ever clicked the "Open Report" button next to their names on TruthFinder's website. *See* Compl.[2] Plaintiffs nonetheless allege that their identities were "misappropriated" under the California Right of Publicity Statute, Cal. Civ. Code § 3344 ("§ 3344"), and the Alabama Right of Publicity Act ("ARPA"), Ala. Code § 6-5-770 *et seq.*, because user-initiated searches theoretically could present their names and biographical information next to the "Open Report" button and then, if someone clicked on that button and through a number of other screens, a user could

---

[1] In ruling on Defendants' 12(b)(6) motion to dismiss, the Court can consider the additional screenshots from TruthFinder.com because the website is referenced in and is central to Plaintiffs' Complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005) ("tak[ing] into account the web pages attached to [defendant]'s motion to dismiss under the 'incorporation by reference' doctrine" where the plaintiffs attached to their complaint only certain parts of defendant's website and defendant's motion attached "the surrounding web pages" that "one must first view" "in order to access" the allegedly unlawful page).

[2] Apart from the fact that Cotta sued under § 3344 and Camacho sued under ARPA, there are no material differences between their allegations.

1  view a page that "market[s] and promote[s] a monthly subscription to access unlimited

2  reports on individuals in [TruthFinder's] database." *Id.* ¶29; Decl. Ex. A at 9–46.

## ARGUMENT

## I.    Plaintiffs Agreed To Arbitrate Their Claims.

Plaintiffs are in the wrong forum. *See* Fed. R. Civ. P. 12(b)(3). The Federal Arbitration Act ("FAA") "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Plaintiffs thus must proceed in arbitration.

### A.    Plaintiffs' Attorney Agreed To The Terms Of Use As Their Agent.

To perform a search on TruthFinder's website, a user must click a button, below which appears a message indicating that clicking constitutes affirmative consent to the applicable Terms of Use ("TOU").[3] Decl. ¶7. The TOU are hyperlinked directly from that message and provide "YOU AND THE COMPANY AGREE THAT ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND THE COMPANY…SHALL BE RESOLVED BY THE FINAL AND BINDING ARBITRATION PROCEDURES SET BELOW." Decl. Exs. B, C.

TruthFinder's records indicate that Plaintiffs' counsel performed searches to generate screenshots used in Plaintiffs' Complaint. Decl. ¶11. To obtain them, Plaintiffs' counsel had to agree to the TOU because they are accessible only *after* a user agrees to the TOU. Compl. ¶¶26, 27; Decl. ¶9; *see Tompkins v. 23andMe, Inc.*, No. 13-CV-05682, 2014 WL 2903752, at *7 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) (access to portions of website requiring consent to TOU establishes assent). Plaintiffs' counsel thus entered into a valid and enforceable agreement to arbitrate. *See Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015) (compelling arbitration for clickwrap agreement).

---

[3] Because a motion to compel arbitration is brought pursuant to Rule 12(b)(3), the Court need not accept the pleadings as true and may consider materials outside the pleadings. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

### B.   Plaintiffs Must Arbitrate Their Dispute.

A lawyer is his client's "agent," *see Pace v. Smith,* 280 So. 3d 428, 436 (Ala. Civ. App. 2019); *Clark v. Andover Sec.*, 44 F. App'x 228, 231 (9th Cir. 2002), and an agent may bind a principal to an arbitration agreement, *see Kindred Nursing Ctrs. E., LLC v. Jones*, 201 So. 3d 1146, 1156–57 (Ala. 2016); *Mormile v. Sinclair*, 21 Cal. App. 4th 1508, 1511 (1994) ("[A]rbitration agreements are enforced with regularity against nonsignatory parties."). An agent has authority to do everything proper and usual for effecting the purpose of his agency. Ala. Code § 8-2-4; Cal. Civ. Code § 2330. Conducting searches that form the basis of Plaintiffs' claims and acquiring screenshots to include in a complaint are activities within the scope of Plaintiffs' counsel's agency—they were "reasonably necessary and proper to" pursue Plaintiffs' claims. *See Simple Helix, LLC v. Relus Techs., LLC,* No. 20-cv-00453, 2020 WL 7401592, at *10 (N.D. Ala. Dec. 17, 2020) (agent bound principal because actions were incidental to authority as agent).[4] Plaintiffs thus are bound to the TOU, including the agreement to arbitrate.

Further, Plaintiffs would be bound by their counsel's agreement even if their counsel acted without authority because they ratified that agreement. *Rush v. Atomic Elec. Co*., 384 So. 2d 1067, 1068 (Ala. 1980) ("A party, by his actions and acceptance of the benefits of a contract and by operating under such agreement … confirm[s] a contract to which his actual signature is not affixed."); *Alvarado Cmty. Hosp. v. Superior Ct.*, 173 Cal. App. 3d 476, 481 (1985) (citing "well-settled rule of agency that a principal will be held to have ratified the agent's actions where he voluntarily accepts the benefits of the unauthorized transaction"); *see also Baptist Health Sys., Inc. v. Mack*, 860 So. 2d 1265, 1273–74 (Ala. 2003) (assent to an arbitration agreement may be manifested through ratification). Plaintiffs ratified the agreement by incorporating into the Complaint information and screenshots gathered by counsel from TruthFinder's website. *See* Compl. at 1–2 (admitting that all

---

[4] Plaintiffs' counsel could have opted out of arbitration, but did not do so. *See* Decl. ¶¶18–19, Exs. B, C.

allegations other than those concerning their "own acts" are based on the "investigation conducted by their own attorneys"). Plaintiffs could not have obtained and used that information, including the screenshots, if counsel had not assented to the TOU. *See Tamsco Props., LLC v. Langemeier*, 597 F. App'x 428, 429 (9th Cir. 2015) (explaining that purchase of investments done "in reliance on information" the plaintiffs would not have obtained if their agents had not accepted the arbitration clause); *Simple Helix, LLC*, 2020 WL 7401592, at *8. Moreover, given that the only allegation in the Complaint that anyone, anywhere has ever viewed Plaintiffs' images involves counsel's own actions, if counsel had not searched for Plaintiffs, their information never would have been displayed as it was in the screenshots in the Complaint, and Plaintiffs would have no basis to even plead a claim.

The Court thus should order arbitration, just as the court did in *Independent Living Resource Center San Francisco v. Uber Technologies, Inc*., No. 18-cv-06503, 2019 WL 3430656, at *4 (N.D. Cal. July 30, 2019). There, Uber moved to compel arbitration because the plaintiffs' agent—a paralegal at the law office representing them—agreed to Uber's terms of service. *Id*. The court held that because the plaintiffs "dispatched their agents to affirmatively test the Uber application in order to bolster their claim of discrimination[,]" they were "bound by the arbitration agreement to the same extent as their agent." *Id*.; *accord Hui Ma v. Golden State Renaissance Ventures, LLC*, No. 21-cv-00856, 2021 WL 2190912, at *4 (N.D. Cal. May 31, 2021). This case is no different. Plaintiffs dispatched their counsel to affirmatively test TruthFinder's website to bolster (indeed, create) their claims.

## C.   If The Court Determines That The Record Does Not Sufficiently Establish Ratification, The Court Should Order Limited Discovery.

In *Knapke v. PeopleConnect, Inc*., the same Plaintiffs' counsel argued that the defendant (which is owned by the same parent as Defendants here) should have taken discovery on the timing and scope of the agency relationship between them and their client before moving to compel arbitration. *See* Plaintiff-Appellee's Answering Br. at 15–16, No. 21-35690 (9th Cir. Jan. 19, 2022), ECF No. 26. While TruthFinder disagrees, out of an

1   abundance of caution, TruthFinder requested Plaintiffs agree to such discovery here.

2   Plaintiffs refused.

3        In all events, to the extent the Court has outstanding questions regarding counsel's

4   authority or Plaintiffs' ratification, TruthFinder requests leave to engage in limited

5   discovery to alleviate any concerns the Court may have. *See e.g.*, *Hesse v. Sprint Spectrum,*

6   *L.P.,* No. C06-0592, 2012 WL 37399, at *2 (W.D. Wash. Jan. 9, 2012) (granting limited

7   discovery into the issue of arbitrability); *Eidson v. Albertville Auto Acquisitions, Inc.*, No.

8   19-cv-00459, 2019 WL 6311495, at *1 (N.D. Ala. Nov. 25, 2019) (granting motion to

9   compel arbitration after allowing limited discovery).

10  **II.    Plaintiffs' Class Allegations Should Be Stricken.**

11       At a minimum, Plaintiffs' class allegations should be stricken under Fed. R. Civ. P.

12  12(f) because Plaintiffs, through their attorneys, agreed to the TOU, which contain a

13  provision waiving their ability to pursue a class action. *See* Decl. ¶17, Exs. B, C; *see also*

14  *Stokes v. CitiMortgage, Inc.*, No. CV 14-00278, 2015 WL 709201, at *4 (C.D. Cal. Jan. 16,

15  2015) (granting Fed. R. Civ. P. 12(f) motion to strike class allegations that "cannot possibly

16  move forward on a classwide basis") (citation omitted); *Holman v. Bath & Body Works,*

17  *LLC*, No. 20-cv-01603, 2021 WL 5826468, at *26 (E.D. Cal. Dec. 8, 2021) (recommending

18  class allegations be stricken where plaintiff agreed to class action waiver). The Court should

19  enforce that provision.

20  **III.   Cotta Fails To State A Claim Under § 3344.**

21       **A.    Cotta Fails To Plead A *Prima Facie* Claim Under § 3344.**

22       Cotta has failed to plead a *prima facie* claim under § 3344: (1) the defendant's "use"

23  of the plaintiff's identity (2) "for purposes of advertising or selling, or soliciting purchases

24  of" products or services (3) "without consent" (4) resulting in injury. Cal. Civ. Code

25  § 3344(a); *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1008 n.2 (9th Cir. 2017).

26            **1.    Cotta Fails To Plead A "Use" Of Her Identity.**

27       To satisfy the use element, Cotta must show an unauthorized publication or

28  dissemination of her identity. *See Christoff v. Nestlé USA, Inc.*, 47 Cal. 4th 468, 476 (2009)

1    (citation omitted) (§ 3344 claims accrue only upon "publication" of the plaintiff's identity,

2    as the "*tort* [is] founded upon . . . publication or exhibition or utterance").

3          The Complaint makes no such allegation—indeed, the Complaint is devoid of any

4    assertion that Cotta's information was published to a third party by Defendants. At most, it

5    offers the conclusory assertion that "Defendants were using [Plaintiffs'] identities."

6    Compl. ¶31. That is not enough. As the Complaint admits, the search results on

7    TruthFinder's website *do not exist* unless a user "searches for an individual" "by typing the

8    individual's first and last name into the search bar" and are not "display[ed]" unless a user

9    generates it by "perform[ing]" a specific search. *Id.* ¶¶2, 26. In fact, Cotta suggests only she

10   or her attorney ever searched for her and that the publication of her identity was only to her

11   or her attorney. *See* Compl. ¶26 (fig. 2). But if the only person to have ever searched for

12   and viewed a search result containing her information was Cotta or her agent, she has not

13   stated a right of publicity violation. Neither the text nor legislative history of § 3344

14   suggests liability for use of the plaintiff's identity *to them alone* in response to *an inquiry*

15   *from them. See Christoff*, 47 Cal. 4th at 476. Cotta thus is unable to meet the use element.

16                    **2.      Cotta Fails To Plead Use Of Her Identity "For Purposes Of**

17                         **Advertising Or Selling, Or Soliciting Purchases."**

18         The Complaint also does not adequately plead that TruthFinder used Cotta's identity

19   "for purposes of advertising or selling, or soliciting purchases of" products or services. Cal.

20   Civ. Code § 3344(a). There must be "a direct connection between the alleged use and the

21   commercial purpose." *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 208 (2017).

22         The Complaint alleges that the search results containing Cotta's name and other

23   biographical information are used "to market and promote a monthly subscription to access

24   unlimited reports on individuals," which Plaintiff admits includes her report. Compl. ¶¶28–

25   29. Alleged advertisements, however, are only "actionable when the plaintiff's identity is

26   used without consent to promote an unrelated product." *Gionfriddo v. Major League*

27   *Baseball*, 94 Cal. App. 4th 400, 413–14 (2001) (collecting cases); *see Guglielmi v. Spelling-*

28   *Goldberg Prods.*, 25 Cal. 3d 860, 873 (1979) (holding that use of plaintiff's identity in

advertisement for movie in which plaintiff appeared was not actionable). "Use of a person's identity in advertising [for] … works relating to the identified individual is not an infringement." *Restatement (Third) of Unfair Competition* § 47 reporter's note cmt. a, Westlaw (database updated Oct. 2021).

This bedrock principle of right of publicity law forecloses Plaintiffs' claims because "[t]he plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs are part of the product offered for sale": background reports about Plaintiffs or a subscription that provides access to their reports. *Dobrowolski v. Intelius, Inc,.* No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018) (emphasis added) (dismissing right of publicity claim against background-report site that displayed plaintiff's information in search results); *see Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418, 2021 WL 3621837, at *4 (N.D. Cal. Aug. 16, 2021) (dismissing § 3344 claim where "Plaintiffs allege[d] the product is their name, likeness, and personal information" and not "a separate product or service"). As the Complaint admits, "[t]he purpose of" TruthFinder's search results page is to "show potential customers that [TruthFinder's] database contains detailed reports for the specific individual they searched for." Compl. ¶2.

Indeed, courts repeatedly have found that websites do not use a person's identity for a "commercial purpose" by identifying the person in search results in response to a user query. *E.g., Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1326 (11th Cir. 2006) (holding that Amazon's display of book cover with plaintiff's photo not "commercial purpose"); *Obado v. Magedson*, Civ. No. 13-2382, 2014 WL 3778261, at *7 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90, 93–94 (3d Cir. 2015) (citation omitted) (dismissing right of publicity claim against websites that showed plaintiff's information in "search results displayed in response to a user-generated query" for access to "publicly available materials connected to plaintiff's name"); *Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *4, *7 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013) (dismissing right of publicity claim against online court records database that displayed plaintiff's name in search results because plaintiff's "name is used only to find documents related to his case").

In response, Plaintiffs likely will seek to distinguish *Dobrowolski*, *Brooks* and similar cases by claiming that TruthFinder advertised a purportedly separate product from the underlying background report—a subscription service. But that is refuted by the screenshots of the search results pages. Compl. ¶26 (figs. 1–2); Decl. Ex. A at 9. These screenshots all show that the search results page does not *mention* a subscription, much less promote or offer to sell one. *Id.* Thus the search results cannot plausibly be construed to advertise or solicit a subscription. And while the Complaint's selective screenshots make it seem as though a subscription offer appears "[o]nce a consumer selects" the "OPEN REPORT" button on the search results page, Compl. ¶27, this is false. As the attached screenshots show, users must affirmatively click through more than ten pages before they arrive at any mention of a subscription offer, and many leave the website at any time before reaching that page. *See* Decl. Ex. A at 9–31.

In any event, the purported report/subscription distinction does not apply here because, as the Complaint concedes, the "searched-for individual's report" is "part of [the] large database" to which the "subscription service" grants access. Compl. ¶28; *Gionfriddo*, 94 Cal. App. 4th at 413. In fact, the parts of the TruthFinder checkout page Plaintiffs misleadingly cropped out of the Complaint's screenshot (Compl. ¶27 (fig. 3)) state that, upon purchasing a subscription, the user "instantly" "UNLOCK[S]" and can "download and print" the searched-for person's report. Decl. Ex. A at 46. The subscription is the vehicle through which users review the report they selected; it then merely allows the user to access other reports *in addition to* that one.

This is significant because courts have long rejected right-of-publicity claims against publishers for using a person's identity to sell a subscription to a publication that includes information about that person as well as about other people. *See, e.g., Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 796 (1995); *Namath v. Sports Illustrated*, 363 N.Y.S.2d 276, 278–80 (N.Y. Sup. Ct. 1975), *aff'd*, 352 N.E.2d 584 (N.Y. 1976); *Restatement (Third) of Unfair Competition* § 47 reporter's note cmt. a, Westlaw (database updated Oct. 2021) (collecting cases). Plaintiffs' theory would upend this settled law and

render unlawful countless media websites, such as YouTube or Encyclopedia Britannica, which allow users to search and view content containing people's identities for free while simultaneously advertising premium subscription services.

### 3.      Cotta Consented To The Use Of Her Identity.

Cotta cannot plead that TruthFinder uses her identity without her "consent." Cal. Civ. Code § 3344(a). As demonstrated above, Cotta consented to TruthFinder's use of her identity because her attorney agreed to the TOU when gathering the screenshots for the Complaint. *See supra* p. 3–4. The TOU included a consent provision:  "You agree that, in the event you conduct a search for yourself on the Websites or you authorize another person [else] to conduct a search for you on the Websites, you have expressly consented to the use and display of information about you (including, without limitation, your name and other attributes of your identity) on the Websites for any and all commercial and non-commercial purposes." Decl. ¶¶20, 21, Exs. B, C. Thus, Cotta's claim fails because, through her attorneys, she "expressly consented to the challenged uses of" her identity. *See Lightbourne v. Printroom Inc.,* 122 F. Supp. 3d 942, 945 (C.D. Cal. 2015) (dismissing right of publicity claim because, based on plain language of the parties' contract, plaintiff consented to the use of his identity).

### 4.      Cotta Fails To Plead An Actionable Injury.

Section 3344 requires Plaintiff to plead she was "injured as a result" of Defendants' use of her identity. Cal. Civ. Code § 3344(a). Indeed, "[r]esulting injury is the sine qua non of a [§ 3344] cause of action." *Slivinsky v. Watkins-Johnson Co.*, 221 Cal. App. 3d 799, 807 (1990). Cotta has not pled any of the facts by which a non-celebrity plaintiff, such as Cotta, can allege an injury for purposes of § 3344.

*First*, Cotta makes no allegation that she suffered mental anguish due to the alleged use of her identity so she is not entitled to statutory damages. *See Miller v. Collectors Universe, Inc.*, 159 Cal. App. 4th 988, 1006 (2008) (explaining that § 3344 permits "statutory minimum damages" awards to "compensate non-celebrity plaintiffs who suffer … mental anguish yet no discernible commercial loss"); *Cohen v. Facebook, Inc.*, 798 F.

Supp. 2d 1090, 1097 (N.D. Cal. 2011) (explaining that under § 3344, "plaintiffs must, at a minimum, plead that they suffered mental anguish as a result of the alleged misappropriation, and a plausible supporting factual basis for any such assertion"); *Perkins v. Linkedin Corp.*, 53 F. Supp. 3d 1222, 1242–46 (N.D. Cal. 2014) (same).

*Second*, Cotta's conclusory allegation that TruthFinder "derived economic value from [her]" is not sufficient. Compl. ¶60. A "plaintiff must do more than point to the dollars in a defendant's pocket; he must sufficiently allege that in the process he lost dollars of his own." *In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013); *Cohen*, 798 F. Supp. 2d at 1097 (holding that "conclusory assertion[s]" of harm are insufficient to allege § 3344 injury). Cotta has missed that mark. She has not pled any facts relating to the purported "economic value" of her identity as required to plead a § 3344 claim.

### B.   Cotta's Claim Is Barred By § 3344's "Public Affairs" Exemption.

Even if Cotta could plead the requisite elements of § 3344, her claim still must be dismissed because TruthFinder's alleged use of her identity falls within § 3344's "public affairs" exemption. Cal. Civ. Code § 3344(d). Section 3344(d) exempts from its coverage the use of a person's identity "in connection with any news, public affairs, or sports broadcast or account." *Id*. This exemption bars Cotta's claim, for TruthFinder's alleged use of her identity was "in connection with" a "public affairs . . . account": TruthFinder's "comprehensive background reports." *Id*.; *see* Compl. ¶24.

"[P]ublic affairs" is "broadly interpreted." *Gionfriddo*, 94 Cal. App. 4th at 416; *see Baugh v. CBS, Inc.*, 828 F. Supp. 745, 754 (N.D. Cal. 1993). "Public affairs" includes any "names, likenesses or facts" presented "for purposes of education, amusement or enlightenment, when the public may reasonably be expected to have a legitimate interest in what is published." *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 225 (1998), *as modified on denial of reh'g* (July 29, 1998) (citation omitted). The exemption is "not restricted to current events"; it covers any works that "legitimately inform and entertain the public,"

1   including "reproduction[s] of past events, travelogues and biographies." *William O'Neil &*

2   *Co. v. Validea.com Inc*., 202 F. Supp. 2d 1113, 1117 (C.D. Cal. 2002) (citation omitted).

3       TruthFinder's background reports fall within the "public affairs" exemption.

4   TruthFinder provides the public with a searchable online "database[] contain[ing] detailed

5   reports" "on just about anyone," which are "compiled" from "public record repositories."

6   Compl. ¶¶24, 46. As the Complaint admits, this "high value information," including

7   "criminal history" and "marriage records," *Id.* ¶25, is information "related to real-life

8   occurrences." *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 545 (1993). It certainly

9   falls within the broad swath of content that "legitimately inform[s] [or] entertain[s] the

10  public." *William O'Neil & Co.*, 202 F. Supp. 2d at 1117 (citation omitted). Further,

11  advertisements for an exempted work are "protected to the same extent as the [work] itself,"

12  and thus cannot be the basis of a right of publicity claim. *Id.* at 1119. Therefore,

13  TruthFinder's search results are shielded from liability even if one accepts the Complaint's

14  characterization that they are "advertisements."

15  **IV.   Camacho Fails To State A Claim Under ARPA.**

16      Camacho's ARPA claim likewise fails. That is because, first, the Complaint does not

17  plead the requisite elements of a *prima facie* claim under Alabama law, second, Alabama's

18  statutory exemptions foreclose his claim and, third, he has not pled a claim within ARPA's

19  territorial scope.

20      Because there is a dearth of cases analyzing ARPA, the Court should look first to

21  Alabama precedent regarding the Alabama common-law right of publicity given that the

22  common law was the "guiding principle" of ARPA's drafting committee. *See* Othni J.

23  Lathram et al., *Alabama's Right of Publicity Act,* 76 Ala. Law 256, 258 (2015) (noting that

24  drafting committee sought to "[m]ake [ARPA] consistent with existing Alabama Common

25  Law"). Courts also have looked to the *Restatement (Second) of Torts* § 652C (1977) and the

26  *Restatement (Third) of Unfair Competition* § 47 (1995). *See Johnson v. Jackson*, No. 20-

27  CV-1710, 2021 WL 2826427, at *3 (N.D. Ala. July 7, 2021). Finally, if Alabama common

28  law and the Restatements do not provide guidance on an issue, the Court must give the text

12

its "natural, plain, ordinary, and commonly understood meaning." *State Farm Mut. Auto. Ins. Co. v. Motley*, 909 So. 2d 806, 813 (Ala. 2005) (internal quotation marks omitted).

### A.  Camacho Fails To Plead A *Prima Facie* Claim Under ARPA.

To state a claim under ARPA, Plaintiff must plead: (1) defendant's "use" of his identity (2) "for purposes of advertising or selling, or soliciting purchases of" products or services (3) "without consent." Ala. Code § 6-5-772(a); *see Johnson,* 2021 WL 2826427, at *3. Camacho's allegations suffer from the same pleading deficiencies as Cotta's: Because Camacho has not alleged that anyone other than him or his attorney ever searched for him on TruthFinder's website, Camacho has not pleaded the "use" of his identity, *i.e.*, the publication to a third party. Compl. ¶26. Camacho also fails to plead that his identity was used for a commercial purpose because, as the Complaint admits, his identity was allegedly used only in connection with a product that contains *his* information: a background report *about him* or a subscription that provides access to *his* report. *Supra* p. 7. And Camacho consented to the use of his identity via his lawyer's agreement to the TOU. *See* Decl. ¶¶12, 20, Exs. B, C.

### B.  Camacho's Claim Falls Within ARPA's Exemptions.

ARPA also expressly exempts from liability certain uses of a person's identity. TruthFinder's alleged conduct falls within two of ARPA's exemptions: the "public interest" exemption and the "expressive work" exemption. Ala. Code § 6-5-773(b).

#### 1.  Camacho's Claim Is Barred by the "Public Interest" Exemption.

ARPA exempts from liability any use of a person's identity "in connection with a news, public affairs, or public interest account … or any advertising or promotion of the same (public interest work)." *Id.* This bars Camacho's claim because he seeks to impose liability for the alleged "advertising or promotion of" a "public interest work"— TruthFinder's "comprehensive background reports." Compl. ¶24.

As a matter of Alabama common law, the Alabama Supreme Court broadly construed the notion of "public interest" protection: "Th[e] legitimate public interest privilege is not merely limited to the dissemination of news either in the sense of current events or

13

commentary upon public affairs. Rather, the privilege extends to *information concerning interesting phases of human activity* and *embraces all issues about which information is needed or appropriate* so that individuals may cope with the exigencies of their period." *See J.C. v. WALA-TV, Inc.*, 675 So. 2d 360, 362 (Ala. 1996) (alterations adopted, internal quotation marks and citation omitted, emphases added). This protection—rooted in "the interest of the public in being informed"—is not limited to "information concerning public figures"; it encompasses any matters that are "truthful and [are] of legitimate concern to the public." *Id.* The Alabama Supreme Court also has recognized that information in the "public record" falls within the "public interest" protection. *Doe v. Roe*, 638 So. 2d 826, 828 (Ala. 1994). The Court should look to this reasoning in applying ARPA's "public interest" exemption. *See supra* p. 11.

As in *J.C.* and *Doe*, TruthFinder's background reports fall within Alabama's "public interest" exemption. As the Complaint alleges, the reports are "compiled" from "public record repositories" and contain "high value information," about human activity including "criminal history" and "marriage records." Compl. ¶¶24, 25. Further, because ARPA exempts "any advertising or promotion of [a] . . . public interest work," Ala. Code § 6-5-773(b), TruthFinder's search results are shielded from ARPA liability even if one accepts the Complaint's characterization of them as "advertisements."

### 2. Camacho's Claim Is Barred by the "Expressive Work" Exemption.

ARPA also exempts from liability use of a person's identity as "part of an artistic or expressive work, such as a live performance, work of art, literary work, theatrical work, musical work, audiovisual work, motion picture, film, television program, radio program or the like," or "any advertising or promotion of the same." Ala. Code § 6-5-773(b); *see Johnson*, 2021 WL 2826427, at *4 (finding ARPA claim barred by expressive work exemption where plaintiff's name and identity were used "for the purpose of First Amendment expression"). TruthFinder's background reports are "expressive work[s] … or the like." Ala. Code § 6-5-773(b).

Moreover, the plain meaning of the term "expressive works" encompasses TruthFinder's "detailed reports about people." Compl. ¶46. The "comprehensive background reports" are "works" because they are written documents "compiled" "from databases and public record repositories." *Id.* ¶24. *See Work*, Merriam-Webster, https://www.merriam-webster.com/dictionary/work (defining "work" as "something produced or accomplished by effort, exertion, or exercise of skill."). And they are "expressive" because they "express," "represent," or "convey[]" information, *see Expressive*, Merriam-Webster, https://www.merriam-webster.com/dictionary/expressive, including "high value information" about people's addresses, birth dates, marriage records, and criminal history. Compl. ¶25.

Furthermore, because ARPA exempts "any advertising or promotion of" an "expressive work," Ala. Code § 6-5-773(b), Camacho's claim is barred by this exemption even if one accepts the Complaint's allegation that the search results are "advertisements."

## C. Camacho Fails To Plead A Claim Within ARPA's Territorial Scope.

Under Alabama law, a statute does not have "extraterritorial effect" unless it "explicitly provide[s] for that effect." *Ex parte Old Republic Sur. Co.*, 733 So. 2d 881, 884 (Ala. 1999). Because ARPA does not, Camacho must allege a sufficient nexus between his claim and Alabama. He fails to do so.

To determine if a sufficient territorial nexus exists, Alabama courts consider: (1) whether "the enforcement of the statute would impose a burden on a noncitizen of Alabama"; and (2) whether enforcement of the statute "would impose upon [the defendant] a burden based upon a right or claim that did not vest while [the defendant] was in Alabama." *Id.* at 885. The first factor demonstrates that there is not a sufficient nexus to Alabama as none of the Defendants are citizens of Alabama.

As to the second factor, Camacho's claim "did not vest" based on any conduct by TruthFinder "in Alabama." *Id*. The Complaint alleges only two facts about Alabama, neither of which relate to TruthFinder's allegedly actionable conduct: Camacho is a resident of Alabama, and TruthFinder "obtain[s] identifying information on Alabama . . . residents."

Compl. ¶¶4, 7. The *sine qua non* of an ARPA claim is "the use" of a person's identity for a commercial purpose. Ala. Code § 6-5-772(a). So, for a claim to be within ARPA's territorial scope, "the use" of the plaintiff's identity must occur in Alabama, meaning that the alleged advertisement containing the plaintiff's identity must be displayed or disseminated within Alabama. *Supra* p. 12. Notably missing from the Complaint, however, is any allegation that the conduct prohibited by the statute—the display of Plaintiff's identity in alleged "advertisements"—took place in Alabama. The Complaint makes clear that only Plaintiffs' counsel, who is located in Pennsylvania, viewed Plaintiffs' search results. *See* Compl. at 16. Moreover, the Complaint's assertion that TruthFinder "obtain[s]" information "on Alabama . . . residents," Compl. ¶4, is irrelevant to the territoriality analysis because *obtaining* information is not a violation of ARPA, which governs only the actual "*use*" of a person's identity. Ala. Code § 6-5-773. Camacho's claim should be dismissed.

## V.      Federal Law Bars Plaintiffs' Claims.

### A.      The Communications Decency Act Bars Plaintiffs' Claims.

Section 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230 thus bars any claim in which: "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1268 (9th Cir. 2016) (citation omitted).

*First*, TruthFinder owns a website accessible to millions and is a provider of an interactive computer service. *Id*.; *see* Compl. ¶1.

*Second*, because Plaintiffs attack TruthFinder's distribution of content, Compl. ¶¶2–5, 26, their claims treat TruthFinder as a "publisher." *Kimzey*, 836 F.3d at 1268; *see also Dennis v. MyLife.Com, Inc.*, No. 20-cv-954, 2021 WL 6049830, at *6 (D.N.J. Dec. 20, 2021) (website providing access to background reports is a "publisher"); *Callahan v. Ancestry.com Inc.*, No. 20-cv-08437, 2021 WL 783524, at *6 & n.13 (N.D. Cal. Mar. 1,

16

2021) (website displaying yearbooks is a "publisher"). That is because Plaintiffs' claims are based on the way in which TruthFinder displays information on its website. *See Force v. Facebook, Inc.*, 934 F.3d 53, 66 (2d Cir. 2019) ("publisher" because it chooses where "third-party content should reside and to whom it should be shown"); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016) ("publisher" because claims "address the structure and operation of the Backpage website … [and] how to treat postings").

*Third*, the Complaint confirms that TruthFinder is engaged in the publication of "information provided by another information content provider," *Kimzey*, 836 F.3d at 1268. Indeed, Plaintiffs allege that TruthFinder gathers its information from "databases and public record repositories." Compl. ¶24. TruthFinder does not—and cannot—create the biographical information such as a person's name, age, location, and family members, that is displayed on the search results page. This suffices to establish the third prong because Plaintiffs "seek to hold Defendant[s] liable for information created by third parties." *Dennis*, 2021 WL 6049830, at *6 (website that "gathers the information from other sources" and "prepar[es] … background report[s]" immune).

There is more. Here, the gravamen of Plaintiffs' claims is the display of their information on a page of search results *in response to a user's query*. Compl. ¶26. That makes this case just like *Gonzalez v. Google LLC*, 2 F.4th 871, 881 (9th Cir. 2021), in which a plaintiff alleged that Google was unlawfully using computer algorithms to match and suggest content to users based on their viewing history. The Ninth Circuit held that because it was the "user's voluntary actions [that] inform[ed] Google about that user's preferences for the types of videos and advertisements the user would like to see," Google was immune for its algorithms that "select the particular content provided to a user based on that user's inputs." *Id.* at 894–95. The same is true here— TruthFinder responds to a user's voluntary search inquiry that informs them about the information the user wishes to see. So TruthFinder is merely publishing search results that "disseminat[e] the same content in essentially the same format" at a user's request. *Kimzey*, 836 F.3d at 1270. That, of course, "does not change the origin of the third-party content." *Id.* For all these reasons, at least

17

three courts have held that Section 230 immunizes a people search website similar to TruthFinder's. *Dennis*, 2021 WL 6049830, at *5–7 (finding CDA 230 immunity and dismissing case); *Liberi v. Taitz*, No. SACV 11-0485, 2011 WL 13315691, at *11 (C.D. Cal. Oct. 17, 2011) (same); *Obado*, 2014 WL 3778261, at *7 (same). The same should be true for TruthFinder, as Plaintiffs' claims are based on the alleged use of their name on TruthFinder.com's search results page. *See* Compl. ¶2.

## B.  The First Amendment Bars Plaintiffs' Claims.

Plaintiffs' effort to prevent TruthFinder's display of informative search results in response to user queries is an attack on TruthFinder's constitutionally protected speech. *See Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (recognizing that "the acts of 'disclosing' and 'publishing' information" qualify as "the kind of 'speech' that the First Amendment protects" (citation omitted)); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1121–22 (9th Cir. 2020) (holding "online database of information" including biographical information protected by First Amendment); *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 964–65 (9th Cir. 2012) (holding that "yellow pages directories are entitled to full First Amendment protection"); *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1388–89 (N.D. Ill. 2016) (holding online directory of attorneys protected by First Amendment).

### 1.  Plaintiffs' Claims Trigger Strict Scrutiny.

Plaintiffs' proposed application of § 3344 and ARPA to protected First Amendment speech amounts to content-based restrictions to which strict scrutiny applies. *See Sarver v. Chartier*, 813 F.3d 891, 903 (9th Cir. 2016) ("California's right of publicity law clearly restricts speech based upon its content."); *IMDb.com*, 962 F.3d at 1120 (statute restricting dissemination of age information "restricts speech because of its content"). Laws restricting content are "presumptively unconstitutional" and must be "narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *see Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571 (2011) (holding that concluding a law is content-based is "all but dispositive"). Plaintiffs cannot show that forbidding displays of user-initiated search results that reflect factual information in "public record repositories,"

1  Compl. ¶24, serves a compelling state interest, let alone that such a prohibition is narrowly
2  tailored.

3      Because they cannot overcome strict scrutiny, Plaintiffs likely will argue the search
4  results are subject to the less demanding review associated with regulations of commercial
5  speech. "Commercial speech is 'defined as speech that does no more than propose a
6  commercial transaction.'" *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001)
7  (citation omitted). As the screenshots show, however, the user-generated search results do
8  not "propose a commercial transaction." Compl. ¶26 (figs. 1–2); Decl. Ex. A at 9. Rather,
9  as the Complaint admits, when users visit TruthFinder's website, they "search for an
10 individual" "by typing the individual's first and last name into the search bar," and, in
11 response, the website displays a list of individuals in order to "show potential customers
12 [whether] Defendants' database contains detailed reports for the *specific* individual they
13 searched for." Compl. ¶2; *see supra* p. 2.

14     By providing a free search of biographical "information," *id.*, and by informing users
15 about the background reports that TruthFinder has available, the search results clearly do
16 "more than propose a commercial transaction," and thus cannot be "commercial speech."
17 *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976)
18 (citation omitted). Moreover, as the screenshots show, and as discussed above,
19 TruthFinder's website does not use Plaintiffs' identities in any ads, promotional pages, or
20 pay screens, beyond indicating to a user that the searched-for individual's background
21 report is being purchased. Decl. Ex. A at 46; *supra* p. 9. The search results page does not
22 mention a subscription, much less offer to sell one.  Decl. Ex. A at 9; *supra* p. 9. Rather,
23 the screenshots confirm what the Complaint itself admits: the alleged "advertisements" are
24 nothing more than search results, presenting factual information, populated in response to
25 a user's query—protected First Amendment speech. *IMDb.com*, 962 F.3d at 1121–22.

26     Moreover, TruthFinder's search results republish information available in public
27 records, Compl. ¶24, and right of publicity claims based on "republication" of such
28 information "are barred by the First Amendment privilege." *Nieman v. VersusLaw, Inc.*,

19

512 F. App'x 635, 638 (7th Cir. 2013); *e.g.*, *Doe v. Oesterblad*, No. EDCV 13 0514, 2013 WL 12085541, at *4 (C.D. Cal. May 9, 2013) (denying relief on right-of-publicity claim because plaintiffs' information was "already available in the public records"); *Vrdolyak*, 206 F. Supp. 3d at 1389 (same). Indeed, it is axiomatic that the First Amendment protects the dissemination of information drawn from public records. *E.g.*, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975); *see also Ostergren v. Cuccinelli*, 615 F.3d 263, 286–87 (4th Cir. 2010).

Even if the search results were "advertisements," when an advertisement promotes speech that is "protected by the First Amendment," the advertisement receives the same protection. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 & n.14 (1983); *Cher v. Forum Int'l, Ltd.*, 692 F.2d 634, 637–39 (9th Cir. 1982), *abrogated on other grounds as recognized in McQuiston v. Marsh*, 790 F.2d 798 (9th Cir. 1986); *Groden v. Random House, Inc.*, 61 F.3d 1045, 1050–51 (2d Cir. 1995); *William O'Neil & Co.*, 202 F. Supp. 2d at 1118–19. Here, the underlying speech are factual biographical reports, Compl. ¶56, which are protected speech. *Bartnicki*, 532 U.S. at 527. Thus, the same First Amendment protection that applies to the background reports must apply to the search results because, as Plaintiffs admit, TruthFinder uses Plaintiffs' identities on its search results pages "to promote those reports." Compl. ¶56. And it is well established that advertisements for subscriptions to constitutionally protected materials are protected to the same degree as the materials themselves. *E.g.*, *Cher*, 692 F.2d at 639; *William O'Neil & Co.*, 202 F. Supp. 2d at 1119; *Montana*, 34 Cal. App. 4th at 796; *Namath*, 363 N.Y.S.2d at 278–80.

### 2. Even If The Search Results Were Commercial Speech, Plaintiffs Cannot Satisfy Intermediate Scrutiny.

Even if TruthFinder's speech were commercial, any restriction on that speech still "must survive intermediate scrutiny under *Central Hudson*." *See Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018); *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 564–66 (1980). "The *Central Hudson* test first asks whether the speech is either misleading or related to illegal activity. If the speech 'is

neither misleading nor related to unlawful activity,' '[t]he State must assert a substantial interest to be achieved by' the regulation. The regulation must directly advance the asserted interest and must not be 'more extensive than is necessary to serve that interest.'" *Italian Colors Rest.*, 878 F.3d at 1176 (quoting *Central Hudson*, 447 U.S. at 563–64, 566). "This requires that there be a reasonable fit between the restriction and the goal, and that the challenged regulation include 'a means narrowly tailored to achieve the desired objective.'" *Ballen v. City of Redmond*, 466 F.3d 736, 742 (9th Cir. 2006) (internal citation omitted) (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)).

Plaintiffs' proposed application of § 3344 and ARPA does not pass muster under *Central Hudson*. First, Plaintiffs do not allege that TruthFinder's speech is "misleading [or] related to unlawful activity." *Central Hudson*, 447 U.S. at 564. Second, Alabama and California have no substantial interest in censoring biographical information compiled from "public record[s]." Compl. ¶¶24–25. Third, there is no "reasonable fit" between the statutes' aim—preventing unauthorized advertisements and endorsements of products—and barring the publication of informational search results so people can find biographical reports on "the person they [are] search[ing] for." *Id.* ¶47; *Ballen*, 466 F.3d at 742. *See Local TV, LLC v. Superior Ct.*, 3 Cal. App. 5th 1, 9 (2016) (citing *Cher*, 692 F.2d at 639) ("Advertising using a publication's content does not violate the right to publicity of a person appearing in the advertising, unless the advertisement implies that the person is endorsing the publication."). Nor is there anything "tailored" about Plaintiffs' proposed applications of ARPA and § 3344, which would sweep in any online retailer or publisher that uses search results to identify a person as the subject of a work in response to a user's query.

## C. Plaintiffs' Liability Theory Violates The Dormant Commerce Clause.

When a state statute regulates out-of-state conduct, it is a *per se* violation of the Dormant Commerce Clause. *E.g.*, *Healy v. Beer Inst.*, 491 U.S. 324, 336–37 (1989) ("[T]he Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State."); *see also Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1324 (9th Cir. 2015). ("[T]he state

21

statute facially regulates a commercial transaction that 'takes place wholly outside of the State's borders.' Accordingly, it violates the dormant Commerce Clause."). Plaintiffs' proposed applications of ARPA and § 3344 thus are *per se* violations of the Dormant Commerce Clause because they seek to regulate *conduct*—the publication of Plaintiffs' information to users viewing electronic devices—occurring *outside* Alabama or California.

Further, even if Plaintiffs had alleged the conduct occurred in Alabama or California, state statutes that "burden, but that do not facially discriminate against, interstate commerce" violate the Constitution's Commerce Clause if they impermissibly burden interstate commerce. *Am. Beverage Ass'n v. Snyder*, 735 F.3d 362, 379 (6th Cir. 2013). Facially neutral statutes that create a disparate impact on interstate commerce are analyzed under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). Under *Pike*, a facially neutral state law violates the Commerce Clause if "the in-state regulatory benefits of a law outweigh the out-of-state burdens the law places on interstate commerce." *Am. Beverage Ass'n*, 735 F.3d at 379. Here, applying ARPA or § 3344 burdens TruthFinder's ability to engage in interstate commerce in a way that is out of proportion to the *de minimus* state interest in those results.

There is no reasonable connection between the intended aims of ARPA and § 3344 to protect against the use of a person's identity for a commercial purpose and a prohibition on TruthFinder's display of search results to identify persons included in its background reports in response to user-generated queries. So the states' interests here are negligible, at best. This negligible interest is far outweighed by the burden on interstate commerce of applying ARPA or § 3344 as Plaintiffs propose. Because of the "boundary-less" nature of the internet, TruthFinder's business is inherently nationwide and interstate. *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003) ("Because the internet does not recognize geographic boundaries, it is difficult . . . for a state to regulate internet activities without project[ing] its legislation into other States.") (internal quotation omitted). TruthFinder's website transmits information across state lines through the internet every hour of every day, providing search results to website users located across the country. If ARPA or § 3344 forbids TruthFinder's search results, as Plaintiffs maintain, TruthFinder must continually

ascertain the precise physical location of each user who views a search result, whether that person is using a tablet, laptop, or smartphone, and then block search results from displaying to users if they are physically located in Alabama or in California. TruthFinder's only alternative would be to apply the restrictions imposed by these statutes nationwide, notwithstanding that many states do not have right of publicity laws and those that do differ in scope.[5]

Making TruthFinder choose between excising Alabama or California from its nationwide transmission of search results—to the extent it is even technologically feasible—or treating ARPA and § 3344 as nationwide directives would be an extraordinary interference of one state's law with interstate commerce. It would have the effect of "impermissibly regulat[ing] interstate commerce by controlling conduct beyond [Alabama or California]." *Am. Beverage Ass'n*, 735 F.3d at 376. That is just what the Commerce Clause forbids.

## VI. Plaintiffs' Claims Are Barred By The California Anti-SLAPP Statute.

California Code of Civil Procedure 425.16 ("Section 425.16"), allows a defendant to bring a special motion to strike any cause of action "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Code Civ. P. § 425.16(b)(1); *see Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1181 (9th Cir. 2013) (en banc). Courts apply a two-part test to determine whether claims are barred by

---

[5] Courts have recognized that the Dormant Commerce Clause often is implicated by state regulation of internet-based businesses, like TruthFinder's website. *E.g.*, *Am. Booksellers Found.*, 342 F.3d at 103; *Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 181 (S.D.N.Y. 1997) ("Regulation by any single state can only result in chaos, because at least some states will likely enact laws subjecting Internet users to conflicting obligations."); *ACLU v. Johnson*, 194 F.3d 1149, 1161–62 (10th Cir. 1999) ("[T]he nature of the Internet forecloses the argument that a statute [regulating speech over the Internet] applies only to intrastate communications."); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 240 (4th Cir. 2004) ("Given the broad reach of the Internet, it is difficult to see how a blanket regulation of Internet material . . . can be construed to have only a local effect.").

Section 425.16. First, "the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). "The burden then shifts to the plaintiff" to "establish a reasonable probability that it will prevail on its claim." *Id.* Under these elements, Plaintiffs' Complaint is a SLAPP and must be dismissed.

### A. Plaintiffs' Suit Arises From TruthFinder's Protected Conduct.

Section 425.16(e) protects "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. P. § 425.16(e)(3), (e)(4). The challenged search results all appear on TruthFinder's website, which is a "public forum." *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006) ("Web sites accessible to the public … are 'public forums' for purposes of the anti-SLAPP statute."); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 895 (2004). The results also constitute speech "in connection with" an "issue of public interest." Cal. Code Civ. P. § 425.16(e)(3). Again, "gathering information for dissemination to the public" is a core First Amendment activity. *See New Kids on the Block v. News Am. Publ'g, Inc.*, 745 F. Supp. 1540, 1546 (C.D. Cal. 1990); *supra* p. 20.

Moreover, the search results constitute protected speech in connection with matters of public interest. Public interest is defined broadly as "any issue in which the public is interested.… the issue need not be "significant" to be protected by the anti-SLAPP statute." *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (granting anti-SLAPP motion). The gathering and dissemination of biographical information falls squarely within the First Amendment. *Supra* p. 20; *New Kids on the Block*, 745 F. Supp. at 1546; *Gionfriddo*, 94 Cal. App. 4th at 411–13; *Dora*, 15 Cal. App. 4th at 542–43.

Plaintiffs' allegations that they appear in "advertisements" do not alter this. First, Plaintiffs' identities do not appear in advertisements. *Supra* p. 7–8, 13. Second, courts have held that if a publication qualifies as constitutionally protected speech, disseminating

portions of it in advertising is likewise protected. *Supra* p. 20. *See William O'Neil & Co.*, 202 F. Supp. 2d at 1119. Moreover, the scope of the anti-SLAPP statute extends further than the scope of constitutionally protected speech. *See hiQ Labs v. Linkedin Corp.*, 273 F. Supp. 3d 1099, 1116 (N.D. Ill. 2017). TruthFinder's alleged use of Plaintiffs' identities is, at a minimum, conduct "in furtherance" of TruthFinder's right to free speech on a public issue or matter of public interest. *See* Cal. Code Civ. P. § 425.16(e)(4).

## B.   Plaintiffs Cannot Show A Likelihood Of Success On Their Claims.

Because Plaintiffs' claims arise from protected speech or an act in furtherance of protected speech, Plaintiffs must "establish a reasonable probability" they will prevail on their claims. *Makaeff,* 715 F.3d at 261. To do so, Plaintiffs must show that these claims are adequately pleaded. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). As demonstrated, Plaintiffs cannot do so.

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed, and Plaintiffs should be compelled to adjudicate their claims in arbitration. In the alternative, the Complaint should be dismissed for the reasons set forth above.

DATED:  January 31, 2022            JENNER & BLOCK LLP

By:   s/  Kate T. Spelman
      Attorney for Defendants
      The Control Group Media Company, LLC
      and TruthFinder, LLC
      E-mail: kspelman@jenner.com